

**U.S. Department of Justice**

**Leah B. Foley**
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*    *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

April 9, 2025

Michael J. Khouri, Esq.
Khouri Law Firm, APC
101 Pacifica, Suite 380
Irvine, CA 92618

   Re: <u>United States v. Le Thu</u>
     Criminal No. 25cr10153

Dear Attorney Khouri:

  The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Le Thu ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

  1. <u>Change of Plea</u>

  Defendant will waive Indictment and plead guilty to counts One and Two of the Information: false statements relating to health care matters, in violation of 18 U.S.C. § 1035. Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

  Defendant agrees to venue of the case in the District of Massachusetts. Defendant knowingly waives any applicable statute of limitations and any legal or procedural defects in the Information.

  Defendant agrees that the facts set forth in the attached Agreed Statement of Facts are true and accurate.

  2. <u>Penalties</u>

  Defendant faces the following maximum penalties on each count: incarceration for five years; supervised release for three years; a fine of $250,000 or twice the gross pecuniary gain or

1

loss, whichever is greater; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Information.

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3.    <u>Sentencing Guidelines</u>

The parties agree, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 29:

a)    Defendant's base offense level is 6 because the statutory maximum term of imprisonment for false statements regarding health care matters is less than 20 years (U.S.S.G. § 2B1.1(a)(2));

b)    Defendant's offense level is increased by 22 because Defendant caused a loss of more than $25 million and less than $65 million (U.S.S.G. § 2B1.1(b)(1)(L));

c)    Defendant's offense level is increased by 4 because the defendant caused a loss of more than $20 million to a government health care program (U.S.S.G. § 2B1.1(b)(7)(B)(iii));

d)    Defendant's offense level is increased by 2 because Defendant abused a position of trust or special skill (U.S.S.G. § 3B1.1);

e)    Defendant's offense level is decreased by 3 because Defendant has accepted responsibility for Defendant's crimes (U.S.S.G. § 3E1.1); and

f)    Defendant's offense level is decreased by 2 because Defendant meets the criteria set forth in USSG § 4C1.1(a) (U.S.S.G. § 4C1.1).

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4.    <u>Sentence Recommendation</u>

The U.S. Attorney agrees to recommend the following sentence to the Court:

     a)  incarceration for a period of 43 months;

     b)  a fine within the Guidelines sentencing range as calculated by the parties, unless the Court finds that Defendant is not able, and is not likely to become able, to pay a fine;

     c)  12 months of supervised release;

     d)  a mandatory special assessment of $200, which Defendant must pay to the Clerk of the Court by the date of sentencing;

     e)  restitution of $27,462,231.66; and

     f)  forfeiture as set forth in Paragraph 6.

The U.S. Attorney also agrees to recommend that any term of incarceration or supervised release be imposed concurrently with any sentence imposed on Defendant in *United States v. Woroboff, et al.*, Case No. 2:21-cr-907 (D.N.J.) ("DNJ Case") as long as Defendant pleads guilty in that matter pursuant to a plea agreement with the United States Attorney's Office for the District of New Jersey ("NJ USAO"), and that Court accepts her plea. In addition, after the Information related to this plea agreement is filed and Defendant has signed a plea agreement relating to the DNJ Case with the NJ USAO, should Defendant move to transfer this case to the United States District Court for the District of New Jersey pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure, the U.S. Attorney agrees to assent to such a motion.

Based on the factors set forth in 18 U.S.C. § 3553(a), Defendant is free to recommend whatever sentence she deems appropriate as to incarceration, fine, and supervised release. Defendant agrees with the U.S. Attorney's recommendation of the mandatory special assessment, restitution, and forfeiture.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further

agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

     5.     <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

     a)  Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

     b)  Defendant will not challenge Defendant's <u>sentence,</u> including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence, regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

     6.     <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

4

The assets to be forfeited specifically include, without limitation, the following:

    a.  $209,755 in United States currency, to be entered in the form of an Order of Forfeiture (Money Judgment).

Defendant admits that $209,755 is subject to forfeiture on the grounds that it is equal to the amount of proceeds Defendant derived from the offense.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

7.    <u>Protection of Assets for Payment of Restitution, Forfeiture and Fine</u>

Without the written approval of the U.S. Attorney, Defendant agrees not to transfer, or to cause or allow anyone else to transfer, (a) any asset restrained by the Court or which Defendant has agreed to forfeit under this Agreement; or (b) any other asset in which Defendant has an interest.

The parties also agree, however, to the following exceptions to the above. Defendant is free to transfer, or to cause or allow others to transfer:

      a.    Assets subject to superior, secured interests of innocent third parties, in which Defendant has an equity interest of less than $5,000;

      b.    Ordinary living expenses, so long as such assets do not exceed $5,000 per month; and

      c.    Attorney's fees incurred in this criminal case.

The prohibitions in this paragraph remain in effect until Defendant has paid any fine, forfeiture, or restitution ordered by the Court.

Defendant also agrees to complete, truthfully and accurately, a sworn financial statement provided by the U.S. Attorney within 30 days of receipt of the financial statement form.

8.    <u>Civil Liability</u>

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

9.    <u>Breach of Plea Agreement</u>

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on

6

the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

10.    <u>Who is Bound by Plea Agreement</u>

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

11.    <u>Modifications to Plea Agreement</u>

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

*       *       *

7

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Howard Locker.

Sincerely,

LEAH B. FOLEY
United States Attorney

By:    Kelly Begg Lawrence
       Chief, Health Care Fraud Unit
       Mackenzie A. Queenin
       Deputy Chief, Health Care Fraud Unit


/s/ Howard Locker
Howard Locker
Assistant U.S. Attorney

## SUBJECT TO FRE 408/410 AND USAO APPROVAL

### ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

_____
Le Thu
Defendant

Date: ___4/20/25___

I certify that Le Thu has read this Agreement and that we have discussed what it means. I believe Le Thu understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
Michael J. Khouri
Attorney for Defendant

Date: __4-23-25__

9

### Agreed Statement of Facts

Defendant agrees to the accuracy of this statement of facts.

On or about July 10, 2019 and July 30, 2019, in the District of Massachusetts and elsewhere, the defendant, Le Thu, Defendant knowingly and willfully made false statements relating to health care matters, in violation of Title 18, United States Code, Section 1035, that is, in any matter involving a health care benefit program, that is, Medicare, Defendant knowingly and willfully falsified, concealed, or covered up by trick, scheme, or device a material fact and made materially false fictitious, or fraudulent statements or representations, or made and used materially false writings or documents knowing the same to contain materially false, fictitious, or fraudulent statements or entries in connection with the delivery of or payment for health care benefits, items, or services. Medicare was a "health care benefit program" as defined in Title 18, United States Code, Section 24. Further, Medicare was a health care benefit program affecting commerce.

THU, a resident of Massachusetts, was a doctor licensed in over ten states, including Massachusetts. Between about March 2017 and continuing through in or about November 2020, THU worked with multiple telemedicine companies, including, among others, RediDoc LLC (RediDoc) and Lotus Health LLC (Lotus). Regardless of the company, THU's work was generally the same. THU received digital copies of medical documentation, including orders (collectively, "doctors' orders"), for durable medical equipment, typically off-the-shelf orthotic braces, and genetic testing for Medicare beneficiaries that made it appear that LE THU was providing legitimate consultations to these beneficiaries, exercising her medical judgment in approving doctors' orders, approving the orders consistent with medical standards, and intended to use results from testing to treat the beneficiaries.

In reality, THU did not review the orders, had never treated, examined, or interacted with the beneficiaries prior to receiving the doctor's orders, and did not intend to—and did not— interact with or provide any medical care to the beneficiaries. Moreover, THU requested an individual, Robin Darnell (who was not medically licensed or trained), to complete and sign the orders on her behalf.

Thus, statements in the orders that THU was personally performing assessments, performed tests, was exercising medical decision making, and intended to use test results to treat beneficiaries were false, and THU knew these statements to be false.

Moreover, Medicare would have denied these claims had it known, for example, that the doctors' orders contained falsehoods, that THU signed many of the doctors' orders without reading them or that THU had other individuals with no medical training signing the orders on her behalf without THU providing any medical services, or that the claims were not the result of a legitimate consultation between THU and each beneficiary.

On or about July 10, 2019, THU signed doctor's orders for genetic testing for Patient 1, a Massachusetts-based Medicare beneficiary, for which Medicare was billed approximately $5,368.44 and paid approximately $2,886.05. The doctor's orders contained material false

statements including, among other things, that the test results would "assist [THU] in making patient-specific clinical decisions" and would "directly impact [THU's] patient's medical management."

On or about July 30, 2019, THU signed doctor's orders for genetic testing for Patient 2, another Massachusetts-based Medicare beneficiary, for which Medicare was billed approximately $24,052.06 and paid approximately $7,748.29. The doctor's orders contained material false statements including, among other things, that the test results "will determine this patient's medical management and treatment decision."

THU acknowledges that these statements were false, she knew they were false, and they were material to Medicare.

THU acknowledges the following constitutes relevant conduct under U.S.S.G. § 1B1.3(a). In addition to the two orders described above, THU signed thousands of similar doctor's orders that contained statements she knew were false and material to Medicare. In total, over the relevant period, THU's signing of orders containing materially false statements caused DME suppliers and laboratories to submit approximately $40.6 million in claims to Medicare, for which Medicare paid approximately $27.5 million, including the claims described above. In total, THU received approximately $209,755 for signing these false doctor's orders.

The preceding statement is a summary made for the purpose of assuring the Court of the factual basis for Defendant's guilty plea. It does not include all facts known to Defendant or the government regarding her illegal activities. Defendant acknowledges and agrees with this statement knowingly and voluntarily because she is in fact guilty of the crimes charged.